Lonnie D. Giamela (SBN 228435)
E-Mail: lgiamela@fisherphillips.com
Drew M. Tate (SBN 312219)
E-Mail: dtate@fisherphillips.com
Bronte Mehdian (SBN 334026)
E-Mail: bmehdian@fisherphillips.com
FISHER & PHILLIPS LLP
515 South Flower Street, Suite 1200
Los Angeles, California 90071
Telephone: (213) 330-4500
Facsimile: (213) 330-4501

Attorneys for Defendants/Counterclaimants, KROENKE SPORTS HOLDINGS, LLC (erroneously sued as KROENKE SPORTS & HOLDINGS, LLC); KROENKE SPORTS & ENTERTAINMENT, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNETTE JONES,<br>Plaintiff,<br>v.<br>KROENKE SPORTS & HOLDINGS LLC, KROENKE SPORTS & ENTERTAINMENT, LLC, SKYCAM, LLC, KSE SPORTSMAN MEDIA, INC., KSE OUTDOOR SPORTSMAN GROUP, LLC, KSE MEDIA VENTURES, LLC, ALTITUDE SPORTS & ENTERTAINMENT, LLC, KEIRSTIN BECK, and DOES 1 to 100, inclusive,<br>Defendants.<br><br>KROENKE SPORTS HOLDINGS, LLC; AND KROENKE SPORTS & ENTERTAINMENT,<br>Counterclaimants,<br>v.<br>LYNETTE JONES,<br>Cross-Defendant. | Case No.: 2:25-CV-06390 SPG (KSx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS AND COUNTERCLAIMANTS KROENKE SPORTS & ENTERTAINMENT, LLC AND KROENKE SPORTS HOLDINGS, LLC'S OPPOSITION TO PLAINTIFF AND COUNTER-DEFENDANT LYNETTE JONES' MOTION FOR ATTORNEY'S FEES PURSUANT TO CAL. CODE CIV. PROC. § 425.16(C)(1)**<br><br>*[Filed Concurrently with Declaration of Bronte Mehdian and [Proposed] Order]*<br><br>Date: December 16, 2026<br>Time: 1:30 p.m.<br>Dept: 5C, 5th Floor<br><br>Complaint Filed: June 11, 2025<br>Trial Date: June 22, 2027 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1
II. BACKGROUND ..... 2
III. ARGUMENT ..... 3
A. Jones Must Prove Fees Attributable to the Claims on Which She Prevailed ..... 3
B. The Award Must Exclude Work Jones' Counsel Would Have Performed Without the anti-SLAPP Motion ..... 3
1. Jones Had to File the Motion to Dismiss Anyway, and She Aimed It at Every State-Law Claim ..... 3
2. Shared Briefing Was Written Once, as Rule 12 Briefing, and Filed Twice ..... 4
3. Jones Cannot Recover for the Claims the anti-SLAPP Motion Failed to Strike ..... 7
C. Jones' Partial Success Did Not Change The Nature and Character of The Case ..... 8
D. The Records Include Time That is Non-Compensable on Its Face ..... 10
1. Preparation for a Hearing the Court Had Already Vacated ..... 10
2. Compiling Time Records ..... 11
3. The Fee Motion Itself ..... 11
4. Remaining Entries ..... 12
E. The Requested Rates Are Unsupported and Unreasonable ..... 13
1. Jones Must Prove the Prevailing Rate in The Relevant Forum for Comparable Work ..... 13
2. Jones' Own Exhibits Set Forth Establish Market Rates Far Below Those She Requests ..... 13
3. The BigLaw Articles Describe a Market in Which Jones' Counsel Do Not Practice ..... 14
4. Prior Approvals in Post-Trial FEHA Cases Do Not Establish These Rates ..... 14
5. Reasonable Rates ..... 16
F. Counterclaimants' Counsel Opposed Both Motions in Fewer Hours, at Rates a Paying Client Actually Paid ..... 17
G. A Reasonable Award Is No More Than $39,066 ..... 18
H. Any Award Should Be Payable on Entry of Final Judgment ..... 18
1. The Court Should Defer Payment Until the Case is Resolved ..... 18
2. Any Award Should Be Offset Against Counterclaimants' Recovery 19
IV. CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*569 East County Boulevard LLC v. Backcountry Against the Dump, Inc.*, 6 Cal.App.5th 426 (2016) .......... 3, 4

*Agopian v. Fed. Express Corp.*, No. CV 20-5282 DSF (Ex), 2021 WL 2634680 (C.D. Cal. June 25, 2021) .......... 16

*Bennett v. Franklin Res., Inc.*, 360 F.Supp.3d 972 (N.D. Cal. 2018) .......... 19

*Blum v. Stenson*, 465 U.S. 886 (1984) .......... 13

*Bringmann v. Shakeshaft*, No. 25-CV-04406-HDV-BFM, 2026 WL 1455016 (C.D. Cal. Apr. 13, 2026) .......... 8

*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir. 2008) .......... 13, 15

*Christian Research Institute v. Alnor*, 165 Cal.App.4th 1315 (2008) .......... 4, 6

*ComputerXpress, Inc. v. Jackson*, 93 Cal.App.4th 993 (2001) .......... 3

*Danielyan v. Mercedes-Benz USA LLC*, No. CV 24-2918 FMO, 2025 WL 2019933 (C.D. Cal. June 18, 2025) .......... 15

*Dowling v. Zimmerman*, 85 Cal.App.4th 1400 (2001) .......... 19

*DuBois v. Boskovich*, No. 21-CV-03224-HSG, 2023 WL 3637030 (N.D. Cal. May 24, 2023) .......... 10

*Evazyan v. Mercedes-Benz USA, LLC*, No. 2:22-cv-06032-JLS-MRW, 2023 WL 11197079 (C.D. Cal. Dec. 6, 2023) .......... 11, 12

*Fallay v. San Francisco City and County*,
No. C 08-2261 CRB, 2016 WL 879632 (N.D. Cal. Mar. 8, 2016) ............................ 4, 6

*Fischer v. SJB-P.D. Inc.*,
214 F.3d 1115 (9th Cir. 2000) ............................................................................ 11

*Franco v. Central Transport LLC*,
No. EDCV 19-1464 ............................................................................ 15, 16

*Frym v. 601 Main Street LLC*,
82 Cal.App.5th 613 (2022) ............................................................................ 3

*Gates v. Deukmejian*,
987 F.2d 1392 (9th Cir. 1992) ............................................................................ 10

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ............................................................................ 3

*Hilton v. Hallmark Cards*,
599 F.3d 894 (9th Cir. 2010) ............................................................................ 3

*Johnson v. United Airlines, Inc.*,
No. 12-cv-02730-VC, 2016 WL 3626707 (N.D. Cal. July 6, 2016) ............................ 6

*Kearney v. Foley & Lardner*,
553 F. Supp. 2d 1178 (S.D. Cal. 2008) ............................................................................ 6

*Ketchum v. Moses*,
24 Cal.4th 1122 (2001) ............................................................................ 3, 18

*Laub v. Horbaczewski*,
No. LA CV17-06210 JAK, 2024 WL 3466181 (C.D. Cal. July 11, 2024) .................... 6

*Lee-Tzu Lin v. Dignity Health-Methodist Hosp. of Sacramento*,
No. CIV. S-14-0666 KJM, 2014 WL 5698448 (E.D. Cal. Nov. 4, 2014) .................... 10

*Lindeke v. Levine*,
No. 23STCV18166, 2025 WL 4592814 (L.A. Super. Ct. Feb. 27, 2025) .................... 16

*Mann v. Quality Old Time Service, Inc.*,
139 Cal.App.4th 328 (2006) ............................................................................ 3, 8

*Manufactured Home Cmtys., Inc. v. County of San Diego*,
655 F.3d 1171 (9th Cir. 2011) ............................................................................ 7



FP 67938858.1

*Matevosyan v. Mercedes-Benz USA, LLC*, No. CV 22-4679-MWF, 2023 WL 8125448 (C.D. Cal. July 10, 2023)........................12

*Metabolife International, Inc. v. Wornick*, 213 F. Supp. 2d 1220 (S.D. Cal. 2002)..........................................................6, 18

*Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009) ............................................................................11

*Navid v. First Quality Builds LLC*, No. 23STCV25545, 2026 WL 3419069 (L.A. Super. Ct. Aug. 31, 2026)..................16

*Ningbo Yituo Enterprise Management Co., Ltd. And Ningbo Yiwei Muyinyongping Youxiangongsi v. Goplus Corp.*, No. 5:24-CV-02548-AJR, 2025 WL 5313656 (C.D. Cal. Oct. 20, 2025)...................12

*Paull v. Rahespar*, No. 23STCV29711, 2024 WL 7119929 (L.A. Super. Ct. Apr. 4, 2024) .....................16

*Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, 890 F.3d 828 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018) ................................5

*PLCM Grp., Inc. v. Drexler*, 22 Cal. 4th 1084 (2000) ..........................................................................................13

*Pollock v. Kelso*, 107 Cal. App. 5th 1190 (2025) ............................................................................17

*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Association*, 163 Cal. App. 4th 550 (2008) ...............................................................................10

*Scarborough v. Eastwestproto, Inc.*, No. 24STCV09594, 2026 WL 1599516 (L.A. Super. Ct. Apr. 17, 2026) ..................16

*Six4Three, LLC v. Facebook, Inc.*, 109 Cal.App.5th 635 (2025) ...................................................................................7

*Thermolife International LLC v. Nikolaidis*, No. 25STCV23506, 2026 WL 2241475 (L.A. Super. Ct. Jul. 20, 2026).....................17

*Tracy Anderson Mind and Body, LLC v. Roup*, No. 2:22-CV-04735 PSG (Ex), 2023 WL 6890744 (C.D. Cal. Sep. 11, 2023) ..........................................................................................................12

*Tukes v. Richard*,
81 Cal.App.5th 1 (2022) .......... 3

*Villanueva v. County of Los Angeles*,
No. 25STCV16285, 2026 WL 1686256 (L.A. Super. Ct. Mar. 26, 2026) .......... 16

*Vizthum v. Filippone*,
No. 25STCV16360, 2026 WL 756423 (L.A. Super. Ct. Jan. 12, 2026) .......... 16

*Weiser Law Firm PC v. Hartleib*,
Nos. 23-55693, 2024 WL 4987351 (9th Cir. Dec. 5, 2024) .......... 6

**Statutes**

Code of Civil Procedure § 425.16(c)(1) .......... 20

Code of Civil Procedure § 917.1 .......... 19

Code of Civil Procedure §1599 .......... 8

**Other Authorities**

Rule 12 .......... *passim*

Rule 12(b)(1) .......... 2

Rule 12(b)(6) .......... 2, 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The instant motion for attorneys' fees, filed by Plaintiff and Counter-Defendant Lynette Jones ("Jones") for $143,405, is demonstrative of overzealousness, a bloated fee request that does not recognize failure on the underlying motion for close to half of the claims challenged and a failure to advise the Court of material facts relating to the time purportedly spent on the special motion to strike. Notably, nearly forty percent of the text from the special motion to strike was copied essentially verbatim from a Rule 12 motion Jones filed the same day against the same counterclaims and for which no fees are allowable. Understanding this, the number of hours allegedly spent on the motion is neither reasonable nor prudent.

The Court has held that Jones is entitled to fees "related to her prevailing claims." (ECF No. 89 ("Order") at 16:27-17:1.) The motion seeks far more than that, not reducing the amount of fees for the unsuccessful challenges, in four ways:

1. It bills for work Jones' counsel would have done anyway. Jones concedes the Rule 12 motion was necessary regardless, because the federal claims could not be challenged under section 425.16. She chose to direct that motion at every state-law claim as well, raising the "same core arguments." (Mot. 4:10-11.)
2. It bills for claims Jones lost and for preparation for a 1:30 p.m. hearing the Court had already vacated at 9:38 a.m.
3. It bills more Partner time for the fee motion than for the anti-SLAPP motion. Lead counsel billed 21.6 hours on the fee motion and 15.1 hours on the ant-SLAPP motion, reply, and hearing preparation that earned the fees.
4. It uses unsupported rates. Jones asks for $1,400 per hour for a twelve-year practitioner and $950 per hour for an associate. The only "market" evidence offered is press coverage of elite BigLaw billing, and that coverage undercuts the requested rates.

Defendants and Counterclaimants Kroenke Sports & Entertainment, LLC ("KSE")

and Kroenke Sports Holdings, LLC ("KSH") (collectively, "Counterclaimants") respectfully ask the Court to award no more than $39,066.00.

## II. BACKGROUND

On June 17, 2026, Jones filed two motions against Counterclaimants' seven counterclaims. (Declaration of Bronte Mehdian ("Mehdian Decl."), ¶ 3, **Exhibits A and B**.) The special motion to strike, also known as an anti-SLAPP motion (ECF No. 65 ("MTS")), challenged the five state-law claims. It expressly acknowledged that the DTSA and CFAA claims "are not subject to this motion and are addressed separately in Counter-Defendant's concurrently filed motion to dismiss." (MTS, 1, fn. 1.) The motion to dismiss (ECF No. 64 ("MTD")) challenged all seven counterclaims. It sought dismissal of the first through sixth causes of action under Rule 12(b)(6) and the seventh under Rule 12(b)(1), all without leave to amend. (MTD, 2:10-14, 16:14-19.) For the state-law claims, it raised the litigation privilege, the fiduciary and loyalty arguments, the conversion arguments, the contract arguments, and the mootness arguments, which are the same arguments made in the MTS. (Compare MTD, §§ IV.A, IV.D-H with MTS, §§ IV.A(6), IV.C–F; *see* Mot. 4:10-18.)

The motions were set for hearing on July 22, 2026. (Mehdian Decl., ¶ 6.) On July 21, 2026 at 9:38 a.m., the Court took them under submission. (ECF No. 75.) The Court's October 16, 2026 Order struck the second, third, and fourth counterclaims (fiduciary duty, loyalty, and conversion), denied the motion to dismiss as to the DTSA and contract claims, dismissed the CFAA claim with leave to amend, and dismissed the seventh count as a remedy rather than a claim, while preserving that relief in the Prayer. (Order 12:16-18, 16:11-17:1, 31:3-5, 32:7-16.) The Court held that the gravamen of the surviving contract claim is Jones' alleged *taking* of the information in violation of the Confidentiality Policy. (Order 16:1-10 (emphasis added).)

Jones now seeks $143,405 in fees: 37.9 hours for Ms. Madjidi at $1,400 per hour ($53,060) and 95.1 hours for Mr. DiBona at $950 per hour ($90,345). (ECF Nos. 97-3, 97-4.)

## III. ARGUMENT

### A. Jones Must Prove Fees Attributable to the Claims on Which She Prevailed

A fee applicant bears the burden of documenting the hours expended and the rates claimed and must exercise billing judgment in doing so. (*Hensley v. Eckerhart*, 461 U.S. 424, 434, 437 (1983); see *Ketchum v. Moses*, 24 Cal.4th 1122, 1131–1132 (2001).) The anti-SLAPP fee provision reaches only fees "incurred in connection with" the motion to strike, not fees for the entire action, and does not cover fees that "would have been incurred whether or not the defendant filed the motion to strike." (*569 East County Boulevard LLC v. Backcountry Against the Dump, Inc.*, 6 Cal.App.5th 426, 433 (2016) (quoting *Christian Research Institute v. Alnor*, 165 Cal.App.4th 1315, 1325 (2008)).) The statute "does not apply to federal law causes of action." (*Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010).) Where an anti-SLAPP motion succeeds only in part, the moving party generally recovers fees only for work devoted to the claims on which she prevailed (*ComputerXpress, Inc. v. Jackson*, 93 Cal.App.4th 993, 1020 (2001)), and where work on successful and unsuccessful claims overlaps, the court considers the movant's relative success and reduces the award as appropriate (*Mann v. Quality Old Time Service, Inc.*, 139 Cal.App.4th 328, 342–345 (2006)). The Order here is to the same effect: it authorized a motion "for fees related to the stricken Counterclaims." (Order 17:8, 33:1–2.)The court may also reduce the lodestar for duplicative work. (*Frym v. 601 Main Street LLC*, 82 Cal.App.5th 613, 621 (2022); *Tukes v. Richard*, 81 Cal.App.5th 1, 16-17 (2022).)

### B. The Award Must Exclude Work Jones' Counsel Would Have Performed Without the anti-SLAPP Motion

#### 1. *Jones Had to File the Motion to Dismiss Anyway, and She Aimed It at Every State-Law Claim*

The anti-SLAPP motion was never the only vehicle for Jones' attack on the counterclaims. Jones concedes the federal claims could be challenged only by a Rule 12 motion. (MTS, 1, fn. 1.) The motion to dismiss was therefore going to be filed regardless

of whether she also filed an anti-SLAPP motion. Having committed to that motion, Jones used it to seek dismissal of all five state-law claims, without leave to amend, on the same grounds she raised in the anti-SLAPP motion. (MTD, 16:14-19; Mot. 4:10-18.)

That choice brings the shared work squarely within *Christian Research* and *569 East County Boulevard*. If the anti-SLAPP motion had never been filed, every hour spent researching and briefing the litigation privilege, fiduciary and loyalty theories, conversion, the Confidentiality Policy, and mootness would still have been spent, because each of those arguments appears in the motion to dismiss. Section 425.16(c) reimburses the cost of the anti-SLAPP motion. It does not reimburse the cost of a Rule 12 motion that the moving party independently needed and independently chose to direct at the same claims. Courts applying the statute in federal court accordingly hold that "work performed on federal claims is not compensable." (*Fallay v. San Francisco City and County*, No. C 08-2261 CRB, 2016 WL 879632 at *3-4 (N.D. Cal. Mar. 8, 2016).)

2. *Shared Briefing Was Written Once, as Rule 12 Briefing, and Filed Twice*

The overlap between the two briefs is not a matter of similar themes. A comparison of the two filings, attached to the Mehdian Declaration as **Exhibit C**, shows that the anti-SLAPP motion reproduces the motion to dismiss essentially verbatim in six places:

| **Section** | **Anti-SLAPP Motion** | **Motion to Dismiss** |
|---|---|---|
| Statement of Facts | 3:14-6:20 | 2:15-6:7 |
| Litigation Privilege | 13:22-14:25 | 11:14-12:12 |
| Fiduciary Duty and Loyalty | 15:4-16:18 | 12:13-13:22 |
| Conversion | 16:19-17:15 | 13:23-14:19 |
| Breach of Contract | 17:16-18:16 | 14:20-15:21 |
| Declaratory and Injunctive Relief | 18:17-19:8 | 6:19-8:6, 15:22-16:13 |

Together, these passages make up approximately 40 percent of the anti-SLAPP motion. (Mehdian Decl., ¶ 4, Ex. C.) The motion to dismiss makes the mootness argument twice,

at 6:19–8:6 and again at 15:22–16:13.

In fact, the anti-SLAPP motion still bears the marks of where that text came from. It asks that the fiduciary and loyalty claims be "dismissed." (MTS, 16:18-19.) It argues the contract allegations are insufficient "under *Iqbal* and *Twombly*." (MTS, 18:14-15.) It contends the Court "lacks Article III jurisdiction" over the declaratory relief count. (MTS, 18:19-23.) None of those is an anti-SLAPP argument. Jones also told the Court that the Rule 12(b)(6) standard governed the special motion and the Court agreed. (MTS, 7:3-5; *see Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, 890 F.3d 828, 833-834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018); Order 7-8 fn.1).) By Jones' own framing, then, prong two of the anti-SLAPP motion was the same legal-sufficiency exercise that the motion to dismiss presented.

The time records confirm what the briefs show. Although the motion to dismiss runs sixteen pages, neither attorney recorded a single entry for drafting it. Instead, Mr. DiBona's May 2026 research entries track the motion to dismiss' arguments in order:

- Litigation privilege (May 14 and 15);
- *Fox Searchlight* and *General Dynamics* (May 18);
- The elements of the fiduciary and loyalty claims (May 19); and
- Conversion of copied documents (May 20).

(ECF No. 97-4 at 3.) His May 21 research on the Confidentiality Policy and May 22 research on mootness and irreparable injury also track the motion to dismiss, but because that work concerns the contract and declaratory relief claims that Jones lost, it is addressed in Section III.B.3 and not counted here. His drafting entries for the statement of facts (June 3), the litigation privilege subsection (June 8), and the fiduciary duty and conversion sections (June 9) cover text that appears verbatim in the motion to dismiss. (*Id.* at 3-4.) The work billed to the anti-SLAPP motion is the motion to dismiss.

The overlap extends beyond the briefs. Both motions rest on the same June 2, 2026 meet and confer conference, cited to the same paragraph of Ms. Madjidi's declaration. (MTD, 6:5-7; MTS 6:18-20.) Both rely on the same exhibits, including the Jones, Nesbit,

and Onyeama declarations. (Compare MTD, 2:6-7, 5:13-14, 5:20-22 with MTS, 5:15-18, 5:26-27, 6:6-7.) And Mr. DiBona's April 30 review of the disqualification record and Jones' declaration (ECF Nos. 22, 29, 51) supplied the statement of facts that appears verbatim in both motions. (ECF No. 97-4 at 2; MTD, 3:18-5:25.)

Jones anticipates this argument by asserting that the Court resolved the litigation privilege within the anti-SLAPP framework, not the Rule 12 framework. (Mot. 13:7-19.) But the question under *Christian Research* is what work was incurred, not which motion the Court chose to decide first. The motion to dismiss made the identical privilege argument. (MTD, § IV.D.) Once the Court struck those claims under the anti-SLAPP motion, it simply had no reason to reach the argument a second time. (Order 17:10-12.)

Nor do Jones' authorities on "intertwined" work help her. Each permitted recovery of companion-motion work only where the anti-SLAPP motion disposed of the entire action, or only for issues genuinely common to the anti-SLAPP motion. In *Metabolife,* the entire lawsuit was subject to the anti-SLAPP motion. (*Metabolife International, Inc. v. Wornick,* 213 F. Supp. 2d 1220, 1223 (S.D. Cal. 2002).) *Laub* recognized the court's discretion to apportion and trimmed overlapping motion to dismiss and anti-SLAPP hours. (*Laub v. Horbaczewski,* No. LA CV17-06210 JAK (KSX), 2024 WL 3466181, at *10 (C.D. Cal. July 11, 2024).) And *Fallay* held that "work performed on federal claims is not compensable," adopting another court's ruling that only motion to dismiss time directed to the state law claims is recoverable. (*Fallay,* 2016 WL 879632 at *3-4.)

*Kearney*, on which *Johnson* relied, tied its award to dismissal of "all of plaintiff's claims" and still excluded motion to dismiss work on "separate and distinct defenses." (*Kearney v. Foley & Lardner*, 553 F. Supp. 2d 1178, 1184 (S.D. Cal. 2008).) *Johnson* awarded only motion to dismiss time on the two theories that also carried the anti-SLAPP motion, then cut the request in half. (*Johnson v. United Airlines, Inc.*, No. 12-cv-02730-VC, 2016 WL 3626707, at *5 (N.D. Cal. July 6, 2016).) *Weiser*, an unpublished disposition, involved an anti-SLAPP motion that disposed of the entire action, and it affirmed a nearly 50 percent reduction across overlapping motions. (*Weiser Law Firm PC*

*v. Hartleib*, Nos. 23-55693, 2024 WL 4987351 (9th Cir. Dec. 5, 2024).) *Six4Three* awarded time on an appeal and sealing motions that were part of the anti-SLAPP motion itself, after a complete victory, and still cut the request by roughly three-quarters. (*Six4Three, LLC v. Facebook, Inc.*, 109 Cal.App.5th 635, 660–661 (2025).) And *Manufactured Home Communities* involved two anti-SLAPP motions, where "all of the fees at issue were incurred in connection with the anti-SLAPP motions." (*Manufactured Home Cmtys., Inc. v. County of San Diego*, 655 F.3d 1171, 1181 (9th Cir. 2011).)

The Court should thus exclude the 22.9 hours ($22,295) of shared work identified in **Exhibit D** to the Mehdian Declaration. That work falls into three groups:

1. **Research and record review** (11.2 hours; $10,640): Mr. DiBona's April 30 record review (2.5) and his May 14 (2.0), May 15 (1.5), May 18 (2.5), May 19(1.5), and May 20 (1.2) research entries.
2. **Drafting** (8.0 hours; $7,600): his June 3 (3.5) and June 9 (3.0) drafting entries, and the litigation-privilege half of his June 8 entry (1.5 of 3.0).
3. **Shared meet and confer and declaration work** (3.7 hours: $4,055): Mr. DiBona's June 1 (1.0), June 2 (.3), and June 12 (1.2) entries and Ms. Madjidi's June 2 (0.3), June 15 (0.6), and June 17 (0.3) entries.

(ECF 97-3 at 2; ECF No. 97-4 at 2-4). It should also exclude the one entry that concerns the motion to dismiss on its face, Ms. Madjidi's July 1 review of Counterclaimants' opposition to that motion (0.8 hours; $1,120). At a minimum, if the Court is not persuaded that the shared work should be excluded entirely, it should allocate no more than half of it to the anti-SLAPP motion.

*3. Jones Cannot Recover for the Claims the anti-SLAPP Motion Failed to Strike*

The anti-SLAPP motion failed as to the contract and declaratory relief claims. Mr. DiBona attests that his time was devoted to the anti-SLAPP motion "only." (ECF No. 97-2, ¶ 11.) His records nonetheless include 8.3 hours ($7,885) spent on those two claims:

- Research into the Confidentiality Policy "re breach of contract counterclaim"

(May 1) and into the policy's enforceability against an employee pursuing employment claims (May 21; 1.8 hours);

- Research into mootness and the irreparable injury requirement for declaratory relief (May 22; 1.0 hour);
- Drafting the two-prong arguments on contract and declaratory relief, block billed with the fees section (June 10) (*see Bringmann v. Shakeshaft*, No. 25-CV-04406-HDV-BFM, 2026 WL 1455016 at *2 (C.D. Cal. Apr. 13, 2026) (finding that "a reduction in fees is warranted for block billing")); and
- Reply research on contract severance under *Wentland*, *Olsen*, and Civil Code section 1599 (July 6).

(ECF No. 97-4 at 2-5.) Jones' attempt to count the declaratory relief cause of action as a fourth anti-SLAPP victory fails for the same reason. (Mot. 9:1–4.) By Jones' own account, it was "the companion motion to dismiss" that disposed of that count. (*Id.*) The anti-SLAPP motion did not dispose of it at all. The Court dismissed it under Rule 12 because declaratory and injunctive relief are remedies, and it preserved the relief through the Prayer. (Order 32:7–16.) The one argument Jones aimed at that count's merits, mootness, failed: the Court "agree[d] with Kroenke," holding that Jones had not met her "heavy burden to demonstrate mootness." (Order 31:17–32:6.) Counterclaimants can still obtain everything that claim sought.

**C. Jones' Partial Success Did Not Change The Nature and Character of The Case**

Even after work on unsuccessful claims is excluded, a partial fee award must be "commensurate with the extent to which the motion changed the nature and character of the lawsuit in a practical way." (*Mann*, 139 Cal.App.4th at 345.) Among the factors *Mann* identifies are whether "the same factual allegations remain to be litigated" and "whether discovery and motion practice have been narrowed." (*Id.*) Measured by those factors, the anti-SLAPP motion changed very little.

The conduct at the center of this case remains in it. Jones' forwarding and retention

of company documents will be litigated on the contract claim, whose gravamen the Court found is precisely that taking. (Order 16:1–10.) It will also be litigated on the DTSA claim, which survived on the theory that Jones acquired trade secrets by improper means when she forwarded documents to her personal email. (Order 24:22–25:15, 26:6–9.) Jones concedes the point. Her brief acknowledges that the factual basis of the state-law claims "also serves as the basis for Kroenke's federal claims." (Mot. 15:13–16 (quoting Order 14:24–15:1).) Discovery into what Jones took, when she took it, why, and what became of it will proceed exactly as it would have without the anti-SLAPP motion.

Nor did the special motion spare Jones the "privilege-laden" discovery she describes. (Mot. 10:11–15.) The privilege issues in this case never depended on Counterclaimants' tort theories. They arise from who Jones was and what she took. As Deputy General Counsel, Jones forwarded to her personal account emails and documents that include communications with Counterclaimants' outside counsel, a memorandum she prepared, and emails in which she gave the company legal advice. (MTS, 4:3–13, 12:18–24.) Those materials are Counterclaimants' privileged communications. They remain at the center of the surviving contract and DTSA claims, which turn on what Jones took, what she kept, and what she did with it. Jones herself told the Court how such issues are handled when in-house counsel litigates against a former employer: through sealing orders, in camera review, and limits on admissibility. (MTS, 15:16–21, citing *Gen. Dynamics Corp. v. Superior Court*, 7 Cal. 4th 1164, 1190–91 (1994).) That work will be the same whether or not the fiduciary, loyalty, and conversion claims had survived. And to the extent Jones means discovery into her own consultations with counsel, the surviving claims do not turn on those communications.

Nor were these counterclaims the retaliatory SLAPP Jones describes. (Mot. 1:3–17, 9:21–10:3, 11:6–8.) The Court found that Counterclaimants "demonstrated they have a probability of prevailing" on the contract claim, sustained the DTSA claim, and rejected Jones' mootness challenge. (Order 16:15–20, 26:6–9, 28:21–22, 31:17–32:6.) In denying disqualification, it also found that the PW Memo, one of the documents Jones forwarded

to herself, is Counterclaimants' privileged communication; that Jones "was not entitled to retain" it; and that her counsel violated her ethical duties by failing to disclose it and then using it at two depositions. (ECF No. 88 at 13:14–14:13, 15:17–19.) That conduct (the taking and retention of privileged company documents, and their use in this case) is exactly what remains to be litigated. The anti-SLAPP motion removed three legal theories but certainly did not change the case.

The claimed hours are also out of line with what courts typically allow for this work. In 2014, one court collected typical awards on an anti-SLAPP motion from 40 to 75 hours. (*Lee-Tzu Lin v. Dignity Health-Methodist Hosp. of Sacramento*, No. CIV. S-14-0666 KJM, 2014 WL 5698448, at *4, *7 (E.D. Cal. Nov. 4, 2014); *see DuBois v. Boskovich*, No. 21-CV-03224-HSG, 2023 WL 3637030, at *2 (N.D. Cal. May 24, 2023) (finding reasonable 34.3 total hours on an anti-SLAPP motion).)

Jones succeeded on three of the five claims she challenged, and the case that remains involves the same documents, the same witnesses, and the same core conduct. Jones claims 96.7 hours for a motion decided on the papers, roughly forty percent of which reproduces her motion to dismiss. When faced with a fee application of this kind, the Court "has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure." (*Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992).) Accordingly, any common time that survives the exclusions above should be reduced by at least forty percent to reflect that limited success.

### D. The Records Include Time That is Non-Compensable on Its Face

Counterclaimants identify each challenged entry in **Exhibit D** to the Mehdian Declaration, as California law requires. (*See Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Association*, 163 Cal. App. 4th 550, 564 (2008).) Several categories warrant particular attention.

#### 1. *Preparation for a Hearing the Court Had Already Vacated*

The Court took both motions under submission at 9:38 a.m. on July 21, 2026. (Mehdian Decl., ¶ 7, **Exhibit E**.) Both attorneys nevertheless billed July 21 time preparing

for the hearing. Ms. Madjidi recorded a 0.8-hour "[p]rep session with ADB for hearing on special MTS," and Mr. DiBona recorded 1.0 hour to "[p]rep for hearing on Anti-SLAPP, incl. prep session with MM." Neither entry records a time of day and nothing in the record shows the work was done before the Court's order issued. Where a hearing is vacated, no hours are necessary to prepare for it. (*Evazyan v. Mercedes-Benz USA, LLC,* No. 2:22-cv-06032-JLS-MRW, 2023 WL 11197079, at *5 (C.D. Cal. Dec. 6, 2023).) These 1.8 hours ($2,070) should be excluded.

*2. Compiling Time Records*

Counsel billed 6.6 hours ($7,890) to assemble roughly seven pages of time sheets. Ms. Madjidi recorded 3.6 hours on November 13 to "[p]repare MM time sheet; review own billing records," and Mr. DiBona recorded 3.0 hours on October 20 to "[c]ompile and audit time records." (ECF No. 97-3 at 4; ECF No. 97-4 at 5.) Courts in this District treat timekeeping as "a clerical, overhead task that is not compensable." (*Evazyan,* 2023 WL 11197079, at *5 (citing *Pacheco v. Ford Motor Co.*, No. 2:18-cv-09006-ODW, 2022 WL 845108, at *4 (C.D. Cal. Mar. 22, 2022)); *see Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009).)

The entries also suggest the records were assembled after the fact rather than kept contemporaneously. That impression is reinforced by the fact that Mr. DiBona's sheet lists his June 1 and June 2 entries ahead of May 11. (ECF No. 97-4 at 2.) Reconstructed records can justify a reduction in an award. (*See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000).)

*3. The Fee Motion Itself*

Counsel billed 32.7 hours ($40,785) to prepare this fee motion, about twenty-eight percent of the entire request. Ms. Madjidi alone billed 21.6 hours, more than the 15.1 hours she billed on the special motion, reply, and hearing preparation combined. Six of those hours were devoted to "substantive briefing on general standards" which Mr. DiBona had already researched three weeks earlier, billing 3.5 hours on lodestar, apportionment, and fees on fees. He then billed another 1.5 hours to "assist with preparing" the brief. (ECF No.

97-3 at 3–4; ECF No. 97-4 at 5.) Courts in this District reduce fee motion time of this kind (*Tracy Anderson Mind and Body, LLC v. Roup,* No. 2:22-CV-04735 PSG (Ex), 2023 WL 6890744 at *7 (C.D. Cal. Sep. 11, 2023) (finding fee motion time unreasonable where defendants are entitled to a fee award pursuant to anti-SLAPP laws and there was "no urgency," thus reducing the time by fifty percent).) As that Court explained, a fee motion "should have amounted to a mere accounting exercise that does not make up such a significant portion of the final fees award." (*Id.*)

The papers that resulted recycle at least one declaration from another matter. Ms. Madjidi's declaration describes her firm as counsel for "plaintiff, Joy Slagel, in this case." (ECF No. 97-1, ¶ 1.) Courts in this District routinely cut time claimed for recycled fee motions. (*Evazyan*, 2023 WL 11197079, at *5 (allowing 5 of 15.3 attorney hours claimed for a fee motion); *Matevosyan v. Mercedes-Benz USA, LLC*, No. CV 22-4679-MWF (JEMx), 2023 WL 8125448, at *10 (C.D. Cal. July 10, 2023) (cutting fee-motion drafting time by half given its template nature).) Fees on fees should be proportionate to the fee motion's success and should not reward duplication. After the record compilation time is excluded, the remaining fee-motion hours should be reduced by at least half, and any supplemental hours Jones' counsel submit on reply should be subject to the same scrutiny.

*4. Remaining Entries*

A handful of smaller items also should not be shifted to Counterclaimants:

- The stipulation extending Jones' time to respond to the counterclaims and the related minute order ($1,180), which Jones would have incurred however she chose to respond (*see Ningbo Yituo Enterprise Management Co., Ltd. And Ningbo Yiwei Muyinyongping Youxiangongsi v. Goplus Corp.*, No. 5:24-CV-02548-AJR, 2025 WL 5313656 at *4 (C.D. Cal. Oct. 20, 2025) (excluding time on stipulations and a continuance motion that "was not necessary to bring the Special Motion to Strike").);
- Ms. Madjidi's duplicative attendance at the same internal conferences with Mr. DiBona on April 29 and July 1 (1.6 hours; $2,240). (ECF No. 97-3 at 2-

3; ECF No. 97-4 at 2, 4.) The April 29 conference was expressly about the "MTN to dismiss federal counterclaims," despite representations that all federal-claim time was excluded. (Mot. 15, fn.1; ECF No. 97-1, ¶ 12.)

- Associate time spent preparing a notice of motion and proposed order ($1,235);
- Half of the time spent reviewing the October 16 Order and the related memo ($1,980), since roughly half of that Order addresses the motion to dismiss. (Order 17-32.)

**E. The Requested Rates Are Unsupported and Unreasonable**

*1. Jones Must Prove the Prevailing Rate in The Relevant Forum for Comparable Work*

A reasonable hourly rate is the rate prevailing in the forum "for similar work performed by attorneys of comparable skill, experience, and reputation." (*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008); *see PLCM Grp., Inc. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000).) The applicant must produce satisfactory evidence, beyond her own attorneys' declarations, that the requested rates match that market. (*Blum v. Stenson*, 465 U.S. 886, 895–896, fn.11 (1984); *Camacho*, 523 F.3d at 980.) Applied here, the relevant community is Los Angeles and the relevant work is a pleading-stage motion decided on the papers.

*2. Jones' Own Exhibits Set Forth Establish Market Rates Far Below Those She Requests*

The exhibits to Jones' counsel's declarations undercut their rates.

The *Lange* order recites that, under the 2024 Real Rate Report, the mean Los Angeles partner rate was $954 and the mean associate rate was $714. (ECF No. 97-8 at 12:7–9.) Mark Lim's *Lange* declaration, also attached by Jones, identifies Mr. DiBona as "an associate attorney for Shegerian & Associates." (ECF No. 97-9 at 4:26–5:4.) Mr. DiBona's requested $950 is thus a third higher than the mean Los Angeles associate rate and essentially equal to the mean Los Angeles partner rate. Ms. Madjidi's requested $1,400

exceeds the mean partner rate by forty-seven percent.

The Law360 exhibit points the same direction. It reports a 2024 median partner rate of $1,050 at the nation's largest firms, those with more than 750 lawyers. It reports far lower medians at smaller firms: $344 at firms of fifty or fewer lawyers, $409 at firms of 51 to 100, $430 at firms of 101 to 200, and $555 at firms of 201 to 500. (ECF No. 97-6 at 2–3.) Shegerian & Associates has fewer than 100 attorneys. On Jones' own evidence, Ms. Madjidi seeks a rate a third above the median partner rate at the country's largest firms and more than three times the median for a firm of Shegerian's size, while Mr. DiBona, an associate, seeks nearly the largest-firm partner median.

*3. The BigLaw Articles Describe a Market in Which Jones' Counsel Do Not Practice*

The Wall Street Journal article attached as an exhibit by Plaintiff's counsel concerns the top fifty U.S. firms by revenue and a handful of celebrity trial lawyers and Supreme Court advocates. (ECF No. 97-7 at 3–5.) The "$1,400" figure Ms. Madjidi highlights is the maximum rate charged by a junior associate at those firms. (Mot. 18:3–5; ECF No. 97-7 at 5.)

The Law360 article was printed on August 14, 2025, more than a year before this motion was filed. (ECF No. 97-6 at 2.) It addresses rates charged to corporate clients, and its source describes those rates as the province of "an elite set of firms." Shegerian & Associates is a plaintiff-side employment firm that works on contingency. Its attorneys do not bill paying clients, so their rates have never been tested by anyone willing to pay them. Neither article says anything about the rate that the market sets for the work at issue here, or work on an anti-SLAPP motion specifically.

*4. Prior Approvals in Post-Trial FEHA Cases Do Not Establish These Rates*

The remainder of the supposed rate support consists of fee orders entered by the Los Angeles Superior Court in FEHA cases after years of litigation and jury trials. Rate determinations in other cases can be satisfactory evidence of the prevailing market rate,

but only where they involve comparable work in the relevant forum. (*Camacho,* 523 F.3d at 980.) These do not.

The *Lange* order made no finding about Mr. DiBona at all. The court analyzed only the rates of three shareholders, finding them reasonable "given that the three shareholder attorneys reference cases where their fees were previously approved." (ECF No. 97-8 at 13:13–17.) As to the other attorneys, it noted only that their requested rates ranged from $550 to $950. (*Id.* at 13:9–12.) The court's acceptance of the shareholder rates rested in part on the seven-year, trial-intensive nature of that case, which it found more complex than basic employment litigation. (*Id.* at 12:20–21.) It also rested on the defendant's failure to offer comparative data. (*Id.* at 11:3–9.) Ms. Madjidi's description of that order as approving Mr. DiBona at $950 overstates what it says. (ECF No. 97-1 ¶ 16.)

Ms. Madjidi's own rate rests on a single order entered one month ago in *Slagel*, a case that followed a $103 million jury verdict. (ECF No. 97-1 ¶¶ 9–10.) She states that her approved rates have increased "[o]ver the years," but she does not disclose a single prior rate. (*Id.* ¶ 10.) Her colleague's declaration fills in the picture. Mr. Lim, a Shegerian shareholder admitted two years after Ms. Madjidi, requested $1,050 in December 2025, after approved rates that climbed from $650 to $700, then $750 in 2022, and $900 in 2023. (ECF No. 97-9 at 3:26–4:10.) Nothing in the record explains why Ms. Madjidi's rate for a pleading-stage motion should be a third higher than his rate for trying a case to verdict.

The work, finally, is not comparable. Rates approved for taking a case through trial do not measure the value of a legal-sufficiency motion decided without a hearing. And unlike a contingent FEHA case, this award carried no risk of nonpayment, because fees under section 425.16(c) were mandatory once the motion succeeded.

Courts set rates by what comparable lawyers charge paying clients for comparable work. In *Danielyan v. Mercedes-Benz USA LLC*, the court set counsel's rate at $550, the rate he charged paying clients, given the routine nature of the case. (*Danielyan v. Mercedes-Benz USA LLC*, No. CV 24-2918 FMO (MAAx), 2025 WL 2019933, at *2 (C.D. Cal. June 18, 2025).) In *Franco v. Central Transport LLC*, the court used the Real Rate

Report to set $600 per hour for employment attorneys with over 22 years of experience and $450 for a six-year associate. (*Franco v. Central Transport LLC,* No. EDCV 19-1464 JGB (SPx), 2022 WL 16921826, at *3 (C.D. Cal. Oct. 27, 2022); *see also Agopian v. Fed. Express Corp.*, No. CV 20-5282 DSF (Ex), 2021 WL 2634680, at *2 (C.D. Cal. June 25, 2021) (finding $500 reasonable for an employment attorney with more than 30 years of experience).)

5. *Reasonable Rates*

Counterclaimants submit evidence of rates actually awarded in the same forum that Plaintiff points to in support of their “reasonable rate,” but for comparable work—anti-SLAPP motions. (Mehdian Decl., ¶ 8, **Exhibit F**.) Summaries of reasonable rates that these courts have approved are as follows:

*Villanueva v. County of Los Angeles*, No. 25STCV16285, 2026 WL 1686256 at *6 (L.A. Super. Ct. Mar. 26, 2026): approving $550 per hour as reasonable rate for anti-SLAPP against federal complaint.

*Vizthum v. Filippone*, No. 25STCV16360, 2026 WL 756423 at *2 (L.A. Super. Ct. Jan. 12, 2026): Los Angeles County Superior Court action approving maximum rate of $550 per hour as reasonable for preparing anti-SLAPP motion .

*Lindeke v. Levine,* No. 23STCV18166, 2025 WL 4592814 at *3 (L.A. Super. Ct. Feb. 27, 2025): approving partner rate of $590 per hour with twenty years of experience in Los Angeles County Superior Court for purposes of calculating fees in connection with anti-SLAPP motion.

*Scarborough v. Eastwestproto, Inc.*, No. 24STCV09594, 2026 WL 1599516 at *4 (L.A. Super. Ct. Apr. 17, 2026): approving rate of $600 per hour but cutting 98.1 hours of alleged work on anti-SLAPP motion in half.

*Paull v. Rahespar*, No. 23STCV29711, 2024 WL 7119929 at *2 (L.A. Super. Ct. Apr. 4, 2024): finding $600 per hour as a reasonable hourly rate for bringing anti-SLAPP motion.

*Navid v. First Quality Builds LLC*, No. 23STCV25545, 2026 WL 3419069 at *2

(L.A. Super. Ct. Aug. 31, 2026): finding $700 per hour as reasonable rate for bringing anti-SLAPP motion, which was worked on for 44.2 hours (including drafting of fees motion).

*Thermolife International LLC v. Nikolaidis*, No. 25STCV23506, 2026 WL 2241475 at *4 (L.A. Super. Ct. Jul. 20, 2026): finding a blended rate of $823.44 for 3 attorneys was reasonable when counsel spent 21.1 hours working on the anti-SLAPP motion.

Even if the Court does not look beyond Jones' own submissions, the rates they support, *at most*, are $954 for Ms. Madjidi and $714 for Mr. DiBona. These are the mean Los Angeles partner and associate rates that Jones herself placed before the Court, and they are more than generous for a firm of Shegerian's size.

**F. Counterclaimants' Counsel Opposed Both Motions in Fewer Hours, at Rates a Paying Client Actually Paid**

"Evidence of how much work one side did is an independent gauge of how much the other side did on the same case." (*Pollock v. Kelso*, 107 Cal. App. 5th 1190, 1197 (2025).) The *Lange* court Jones relies on applied that principle, faulting the opposing party for not disclosing its own hours. (ECF No. 97-8 at 11:3–9.) Counterclaimants do not make that omission. (Mehdian Decl., ¶10, **Exhibit G**.)

Fisher & Phillips LLP opposed both of Jones' motions. It filed a 22- page opposition to the anti-SLAPP motion (ECF No. 66) and a 21-page opposition to the motion to dismiss (ECF No. 67), in a combined total of **41.4 attorney hours**. (Mehdian Decl., ¶ 10, Ex. G.) Jones claims 96.7 hours for the anti-SLAPP motion, reply, and hearing preparation alone, and 133 hours overall just on the anti-SLAPP motion and fees motion. Counterclaimants' counsel thus answered two motions in roughly 55 fewer hours than Jones' counsel spent on one, even though the special motion was built largely from text Jones had already written for the motion to dismiss.

The rates tell the same story. Counterclaimants' counsel billed this work at $425 per hour for partners and $345 per hour for associates, a blended rate of $ 348.29 per hour. (Mehdian Decl., ¶10, Ex. G.) A sophisticated client paid those rates for this motion practice, in this case, in this District. Jones' counsel seek a blended rate of $1,078 per hour.

Because Jones' counsel work on contingency and do not bill paying clients, what Counterclaimants actually paid is the most direct evidence in the record of what the market will bear for this work. The lodestar is built on "the hourly prevailing rate for private attorneys in the community conducting noncontingent litigation of the same type." (*See Ketchum*, 24 Cal. 4th at 1133.)

### G. A Reasonable Award Is No More Than $39,066

| **Adjustment** | **Amount** |
|---|---|
| Fees Requested | $143,405 |
| Facially non-compensable entries, the motion to dismiss entry, and work on claims Jones lost | -$25,600 |
| Work shared with the motion to dismiss | -$22,295 |
| Forty percent relative success reduction on remaining merits time | -$25,046 |
| Fifty percent reduction of remaining fee motion time | -$16,448 |
| Subtotal at Requested Rates | $54,016 |
| At $954 and $714 Adjustment | **$ 39,066** |

### H. Any Award Should Be Payable on Entry of Final Judgment

#### *1. The Court Should Defer Payment Until the Case is Resolved*

Any award here would be interlocutory. Counterclaimants' DTSA and contract counterclaims remain pending, and so do Jones' own claims. The Court denied the motion to dismiss the DTSA and contract counterclaims. (Order 12:16-18, 16:11-17:1, 31:3-5, 32:7-16.) Trial is set for June 2027. Requiring payment now would produce piecemeal transfers of money between parties whose remaining claims against each other will be tried together within weeks. Deferring payment until final judgment avoids that result. It costs Jones nothing, and it lets the Court enter a single judgment that accounts for every monetary award in the case.

Federal courts, including in anti-SLAPP cases, have controlled the timing of fee proceedings and fee payments to fit the posture of the case. (*See, e.g.*, *Metabolife, supra,*

213 F.Supp.2d at 1221-1222) (staying a prevailing defendant's timely § 425.16(c) fee application pending resolution of the plaintiff's appeal of the dismissal, then granting it after the Ninth Circuit affirmed); *Bennett v. Franklin Res., Inc.,* 360 F.Supp.3d 972, 976-977 (N.D. Cal. 2018) (granting a fees motion but staying disbursement of the fees until the court heard a pending motion to stay). The same approach is warranted here, and the reason for deferral is stronger. The claims that remain are not collateral to the anti-SLAPP motion; they arise from the same conduct. Jones' own brief acknowledges that the factual basis of the state-law claims "also serves as the basis for Kroenke's federal claims." (Mot. 15:13-15.)

Jones relies on *Dowling v. Zimmerman* (Mot. 16:11-12), but that case does not require immediate payment. *Dowling* held that a plaintiff who appeals a fee judgment entered after a successful special motion to strike must post an undertaking under Code of Civil Procedure section 917.1 to stay its enforcement (*Dowling v. Zimmerman,* 85 Cal.App.4th 1400, 1431-1433 (2001).) It addressed stays pending appeal under a California appellate statute. It did not address when a federal court may make an interlocutory award payable while the parties' claims remain to be tried.

2. *Any Award Should Be Offset Against Counterclaimants' Recovery*

Any award should also be subject to offset against whatever Counterclaimants recover on their pending DTSA and contract counterclaims. Those claims survived Jones' Rule 12 motion and will be tried. The Court held that the gravamen of the surviving contract claim is Jones' alleged taking of information in violation of the Confidentiality Policy. (Order 16:1-10.) Jones' forwarding and retention of company documents will be litigated on both the contract claims and the DTSA claim. If Counterclaimants prevail, Jones will owe them money arising from the same events. Requiring Counterclaimants to pay a fee award now, and then to collect a judgment from Jones later, would serve no purpose. The fairer course is to net the two at final judgment, so that only the party with the net balance pays.

Counterclaimants therefore ask that any fee award be payable on entry of final

judgment and be subject to offset against any amounts Jones is adjudged to owe Counterclaimants.

## IV. CONCLUSION

For the foregoing reasons, Counterclaimants respectfully request that the Court award Jones no more than $39,066 in attorneys' fees under Code of Civil Procedure section 425.16(c)(1), and order that any award be payable on entry of final judgment, subject to offset.

Dated: November 25, 2026 FISHER & PHILLIPS LLP

By: /s/ Bronte Mehdian
Lonnie D. Giamela
Drew M. Tate
Bronte Mehdian
Attorneys for Defendants/Counterclaimants, KROENKE SPORTS HOLDINGS, LLC (erroneously sued as KROENKE SPORTS & HOLDINGS, LLC); KROENKE SPORTS & ENTERTAINMENT, LLC

## CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and not a party to the within action. I am employed with the law offices of Fisher & Phillips LLP and its business address is 515 South Flower Street, Suite 1200, Los Angeles, California 90071.

On November 25, 2026, I served the following document entitled **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS AND COUNTERCLAIMANTS KROENKE SPORTS & ENTERTAINMENT, LLC AND KROENKE SPORTS HOLDINGS, LLC'S OPPOSITION TO PLAINTIFF AND COUNTER-DEFENDANT LYNETTE JONES' MOTION FOR ATTORNEY'S FEES PURSUANT TO CAL. CODE CIV. PROC. § 425.16(C)(1)** on all the appearing and/or interested parties in this action as follows:

| | |
|---|---|
| Carney R. Shegerian<br>Mahru Madjidi<br>SHEGERIAN & ASSOCIATES, INC.<br>320 North Larchmont Boulevard<br>Los Angeles, California 90004 | *Attorneys for Plaintiff*<br>LYNETTE JONES<br><br>Tel: (310) 860-0770<br>Email: CShegerian@Shegerianlaw.com<br>MMadjidi@Shegerianlaw.com<br>calendarclerk@shegerianlaw.com<br>joyce@shegerianlaw.com<br>aescalante@shegerianlaw.com |

☒ **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

☐ **[by ELECTRONIC SERVICE]** - Pursuant to an agreement of the parties to accept service by electronic transmission, I electronically served the document(s) to the person(s) at the electronic service address(es) listed above.

I declare that I am employed in the office of a member of the State of California at whose direction the service was made.

Executed on November 25, 2026, at Los Angeles, California.

*/s/ Nora Martinez*
Nora Martinez